## Chicago & Alton Railroad Company v. Nicholas Vipond, Admr.

### Gen. No. 4,216.

1. OPINION OF WITNESS—*when particular question does not call for the.* Where a witness has stated that he knew the working condition of a semaphore at a particular time, a question asking him what such condition was at such time, calls for the statement of a fact and not for a mere opinion.

2. CONDITIONS AFTER ACCIDENT—*when evidence of, competent.* Held, in this case, where the condition of a semaphore at the time of the accident was a material question, that in view of all the evidence it was competent to prove what such condition was soon after the accident occurred.

3. MOTION TO EXCLUDE—*when, essential to urge incompetency of particular evidence.* Where the court has admitted a photograph with the statement that if it turned out that a semaphore shown therein

was not the one in question in the case a motion to exclude would be entertained, it is essential that such motion should be made in order thereafter to urge the incompetency of such photograph.

4.   PHOTOGRAPH—*when admission of, if improper, is harmless error.* Where it is claimed that a photograph has been improperly received in evidence because of showing a semaphore not the one involved in the case, such claim is without merit, even though, technically, the photograph may have been improperly received in evidence, where the construction of such semaphore and the manner of operating it had been orally described, and such description not disputed in the proof.

5.   ORDINANCE—*when, regulating speed of passenger trains in municipality is incompetent.*   An ordinance restricting the speed of passenger trains within the limits of a particular municipality, is incompetent in an action for personal injuries arising from a collision of the trains of two different roads, where such ordinance is offered by the defendant for the purpose of showing the contributory negligence of the plaintiff who was a fireman employed upon one of the trains, but who did not have the control of the operation thereof.

6.   TORT-FEASOR—*what will not excuse.*   A wrong-doer cannot be heard to say in defense that another tort-feasor contributed to the wrong.

7.   FELLOW-SERVANTS—*when doctrine of, does not apply.*   The doctrine of fellow-servants is only applicable as between master and servant.

8.   INSTRUCTION—*when a correct, need not be given.*   An instruction which contains a correct abstract proposition of law not applied concretely to the case, if refused, does not constitute error.

Action on the case for personal injuries.   Appeal from the Circuit Court of LaSalle County; the Hon. HARVEY M. TRIMBLE, Judge, presiding.   Heard in this court at the October term, 1903.   Affirmed. Opinion filed March 14, 1904.

C. W. BROWN and A. H. SHAY, for appellant.

H. H. DIOUS and McDOUGALL & CHAPMAN, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

The main line of the Atchison, Topeka & Santa Fe Railroad crosses the Peoria branch of the Chicago & Alton Railroad in the city of Streator nearly at right angles, and some seventy-five or one hundred feet further on, it also crosses at a similar angle the Indiana, Illinois & Iowa Railroad, called in this record "The Three I."   These crossings are controlled by semaphores.   There is a semaphore at each

crossing and each semaphore has two arms, one extending over each railroad making that crossing. These semaphores and each arm thereof are operated by the same lever and wires and by the same motion. For a signal of danger they exhibit by day a horizontal arm or board, and by night not only the board but also a red light. Upon each semaphore there are two lamp brackets, one on the side towards each of the two roads crossing there. In each bracket is placed at night a lamp having in it a white light surrounded by white glass. When the board is raised to the danger or horizontal position, an iron frame called a speck comes over the lamp. The speck has in each side a thick, red glass, and while the speck is over the lamp it is thereby caused to display at night a red light both ways on the track of the railroad across which that board and lamp extend. These danger signals are a notice to approaching engines and trains on that road that the road to which the signal is exhibited has not the right of way but must stop before reaching the crossing. When these semaphores exhibit a danger signal to one road at the crossing they exhibit a safety signal to the other road at the same crossing. The safety signal by day is the arm dropped to an angle of forty-five degrees, and that movement lifts the speck from the lamp bracket, thereby removing the red glass and leaving the lamp in that bracket at night to display a white light as a safety signal. These semaphores are so constructed and operated that they show the same signals at each crossing, and show to the Alton the same signal they show to the Three I; when the Alton semaphore exhibits a safety signal to that road, the other semaphore must also display a safety signal to the Three I at its crossing, and each semaphore must at the same time show a danger signal to the Santa Fe; and when the semaphores show safety signals to the Santa Fe, danger signals appear to the Alton and the Three I. Both semaphores are at all times kept set to show safety to the Santa Fe and danger to the other two roads, except when an Alton or a Three I engine or train calls for the crossing. While these semaphores were thus ar-

ranged and operated, and at about 1:40 or 1:50 A. M. of December 27, 1899, a switch engine on the Santa Fe, backing and hauling several freight cars, and a passenger train on the Alton, came into collision on that crossing, and Henry Dirkes, fireman on the Santa Fe engine, received injuries from which he died. The administrator of his estate brought this suit against the Chicago & Alton Railroad Company for the benefit of his wife and child.

The first count of the declaration charged that the servants of the Alton ran its passenger train upon the crossing against a red light displayed to it by that semaphore as a danger signal, requiring it not to go upon the crossing. Defendant pleaded not guilty, and plaintiff had a verdict under the first count, and a judgment thereon, and defendant appealed to this court. At that trial the proof was clear that at the time of and for at least thirty minutes before the collision the semaphore showed a white light to the Santa Fe; but the engineer, fireman, conductor and brakeman of the Alton train testified that it displayed a white light to them when they were at their depot, some 1200 feet before they reached the crossing, and the engineer and fireman testified it continued to show white to them till they reached the crossing. There was no proof at that trial that the semaphore was in good working order that night, nor that the red glass was in place and unbroken, nor were the construction and operation of the semaphore explained with any detail. We reversed that judgment in Chicago & Alton Railroad Company v. Vipond, 101 Ill. App. 607, and held the jury were not warranted by that proof in finding a red light was displayed to the Alton, but that the reasonable conclusion from the proof was that the semaphore was in some way out of repair, or the red glass out or misplaced, so that the semaphore showed a white light both to the Santa Fe and to the Alton. At a second trial plaintiff again recovered a verdict and a judgment, and defendant again appeals. At the second trial the evidence was much the same as before, and the briefs state the parties by agreement read the former testimony to the jury to a large ex-

tent.   That proof is sufficiently stated in our former opinion, and need not be repeated here.   Plaintiff introduced some additional testimony at the second trial, to meet the views expressed by this court.   He proved by several witnesses who, in the discharge of their regular duties, were about the Santa Fe yards and repeatedly went over that crossing that night with engines and cars, that the semaphore in question was in good working order that night.   The inspector for the Santa Fe, under whose charge these Santa Fe tracks were, testified at the second trial that he arrived at Streator at 6:30 that morning and went directly to the semaphore and examined it as it lay upon the ground, where it had been thrown by the collision, and found the red glass in each arm or speck unbroken.   The Santa Fe engineer testified that shortly after the accident he saw that the semaphore at the crossing of the Santa Fe and the Three I showed a red light to the Three I tracks.   The hostler helper at the Santa Fe roundhouse testified that he went to the scene of the accident immediately after the collision, and saw that at the crossing of the Santa Fe and the Three I the board was raised against the Three I.   Plaintiff also introduced further proof of the construction and operation of these semaphores, the purport of which is set out in the first part of this opinion, and it tended to show the impossibility of their displaying a white light to the Santa Fe and to another road at the same time, while in working order.   There is no proof they had ever been out of repair or the red glasses broken or displaced.   Defendant lays stress upon the testimony of the lamplighter that he put white lights in each bracket that night.   But the proof is that the lights themselves are always white.   It is the red glass in each side of the speck coming down over the lamp when the board is raised which produces the red light. When the arm is dropped the speck is raised and with it the red glasses, and the white light again appears.

It is argued the court erred in permitting plaintiff's witnesses to testify that the semaphore was in good working order that night, the ground of the objection being that

the answer was but the expression of an opinion.  Each of these witnesses first stated he knew the working condition of the semaphore that night.  We think it was proper to then ask what the condition was, and that the question called for a fact and not for a mere opinion.  Moreover, the testimony of the inspector that at 6:30 that morning he found the red glass in each arm unbroken is not denied or rebutted; and, if true, it shows that the semaphore was in good working condition in the only particular bearing upon this case, so that if the witnesses should not have been permitted to say directly that it was in good working order, yet that statement was harmless as the fact was otherwise established.  It is argued the court erred in admitting proof that shortly after the accident the other semaphore showed a red light to the Three I.  From the proof already referred to as to the construction of the two semaphores and of their simultaneous movement in the same way at the same time by the same lever, it follows that if at the time of the accident a red light was displayed to the Three I, then that movement of the Alton semaphore also had been made which must necessarily show a red light to the Alton, if the Alton semaphore was in working condition.  True, this particular item of proof did not show the Alton semaphore was in working order but only that if 'it was in working order then it did display a red light to the Alton at that time.  When this proof is considered in connection with the other proof that the Alton semaphore was in good working condition that night, and that after the accident the red glasses were found in the specks unbroken, it tends to show a red light was displayed to the Alton trainmen, notwithstanding their testimony to the contrary.  Therefore, the proof as to the condition of the Three I semaphore soon after the accident was competent.  Exhibit A was a photograph of the Alton crossing.  It showed a semaphore there.  Defendant objected to the photograph only so far as the semaphore was concerned, and that on the ground it was not the same semaphore.  Plaintiff insisted it was the same.  The court

admitted it with the statement that if it turned out it was not the same semaphore, a motion to exclude would be entertained. No such motion to exclude was made, but during the closing argument defendant objected to the use plaintiff's counsel was making of it. Plaintiff's counsel then insisted the proof showed it was the same semaphore, and the court permitted him to proceed, but he made no further reference to the photograph of the semaphore, so far as it appears from his further remarks set out in the bill of exceptions. Under these circumstances we are unable to say the court erred. If, after the close of the evidence, defendant claimed it had not been shown to be the same semaphore, he should have moved to exclude the photograph. Not having made that motion, the photograph was in evidence and a proper subject of comment. Defendant did not object to plaintiff's counsel commenting on the other features of the picture, and after defendant objected to comments upon the semaphore in the photograph, plaintiff's counsel desisted therefrom. But if Exhibit A should not have been admitted till proof was introduced it was the same semaphore and in the same position, we are unable to see that defendant was harmed thereby. The construction of the semaphore and the manner of operating it were described orally, and that description was not disputed in proof. The photograph was taken from such a point of view as to give but little idea of the semaphore, and we think it did not harm defendant.

The Santa Fe engineer testified that when he first saw the engine of the Alton train he was running seven or eight miles per hour. Defendant offered an ordinance of the city of Streator restricting the speed of any other than a passenger train to six miles per hour, and told the court the purpose was "to show that the person managing the Santa Fe locomotive did so in violation of the ordinance of the city by going at a higher rate of speed at the time of the collision than authorized by the ordinance;" and that "it shows contributory negligence on the part of the person in charge of the Santa Fe locomotive;" and that

failure to observe an ordinance limiting the rate of speed within the city limits is *prima facie* evidence of negligence. The court sustained an objection by plaintiff to the ordinance. In its reply brief defendant denies that this ordinance was offered under section 24 of the act in relation to fencing and operating railroads. That concession is correct. That statute might be applicable if this were a suit against the Santa Fe for an injury inflicted by its train while running in the city at a speed forbidden by ordinance; but this suit is not against the road which violated the ordinance, and therefore that statute is not in point. Defendant argues it was negligence *per se* to run the engine at the prohibited speed, citing L. S. & M. S. Ry. Co. v. Parker, 131 Ill. 557. But whose negligence was it? If it was the negligence of the Santa Fe that would be no defense to the Alton if it also was negligent. A wrong-doer cannot be heard to say in defense that another tort-feasor contributed to the wrong. If it was the negligence of the engineer, that cannot be attributed to the fireman. The doctrine of fellow-servants is only applicable in a suit against their common master. In that respect defendant's given instructions were too favorable to it. The engineer and fireman were not servants of the Alton, the defendant here. Dirkes did not control the speed of the train, and the proof does not tend to show he was responsible for the violation of the ordinance. But it is argued the declaration alleges Dirkes was in control of the engine, and therefore the ordinance should have been admitted. That allegation was as follows: "Which said locomotive and train of cars were then and there under the care and management of divers then servants of said Atchison, Topeka & Santa Fe Railroad Company, of which the said Henry Dirkes was one, the said Dirkes then and there being a fireman on said locomotive, who were then and there driving the same along and upon said railroad near and towards the said crossing of the said The Chicago & Alton Railroad and the said Atchison, Topeka & Santa Fe Railroad." We are of opinion this allegation only means

that Dirkes was one of the servants of the Santa Fe who were operating that train and had its care and management, and that his duty was that commonly devolving upon the fireman, which it is a matter of common knowledge does not give him control of the engine or of its speed when there is an engineer at his post of duty. It is not an allegation that Dirkes controlled the speed of the train or was responsible therefor. The objection to the ordinance was properly sustained. We find no reversible error in the rulings of the trial court upon the evidence, so far as the objections thereto have been argued by appellant here.

It is argued that Dirkes should have watched for and discovered the approach of the Alton train, and warned the engineer in time to have averted the collision, and that in failing to do so he failed to exercise due care for his own safety. There was much proof as to what buildings, bill boards and other obstructions, intervened between the Alton train and a man on the Santa Fe engine, as they approached the crossing. Dirkes had other duties as fireman besides keeping a lookout. The white light was displayed by the semaphore to the Santa Fe and the arm was lowered; indicating to Dirkes, if he looked, as well as to the engineer, who testified he did look, that the crossing was clear for the Santa Fe engine. Whether under all the existing circumstances Dirkes was exercising due care was a question of fact, and the proof does not warrant us in disturbing the conclusion of the jury on that subject.

Instructions numbered thirteen to eighteen, inclusive, offered by defendant and refused, related to the supposed failure of the person or persons in charge of the Santa Fe engine to stop within 800 feet of the crossing as required by section twelve of the act in relation to fencing and operating railroads; and they were based upon the absence of proof that the semaphore system in use at this crossing had been approved by the railroad and warehouse commission. These are in substance the same instructions offered upon that subject at the former trial and then refused. In our former opinion we approved that action of the court, and

gave the reasons which led us to the conclusion they were not material to this case. We adhere to the views upon that subject then expressed, and refer to that opinion for them.

But there are two further reasons why these instructions were properly refused:

First. As we hold that the allegations above quoted from the declaration do not mean that Dirkes was in charge of the engine in the sense that he controlled its movements, and as the proof is undisputed that the engineer had charge of it and there is no proof that Dirkes had any control of its movements, it follows that if this statute required that, notwithstanding the semaphore system there in use, this engine should be stopped within 800 feet from this crossing, and that the engineer or other person in charge thereof should positively ascertain that the way was clear and that the train could safely resume its course before proceeding to pass the crossing, yet this was a duty which devolved upon the engineer in charge of the engine, and it was not a duty cast by law upon the fireman; and the failure to discharge the duty was not imputable to Dirkes and was not due to his negligence.

Second. At the former trial the engineer testified he started his engine at a certain place and that that point was 1000 feet from the crossing. At this trial he testified that he started from the frog of a certain switch, known as No. 2 track frog, fifteen or twenty feet from the Santa Fe depot, and that that frog was 645 feet from the crossing. Defendant proved by a civil engineer that the distance from the crossing to the Santa Fe depot was 609 feet. It therefore now appears that this engine was started towards the crossing from a point less than 800 feet distant. Most of the instructions now under discussion were therefore inapplicable to the proofs, and were properly refused. The seventeenth instruction stated the duty not only to stop but also positively to ascertain that the way was clear, but it added that if the persons in charge of the Santa Fe engine failed to positively ascertain that the way was clear

and if that failure contributed to the injury or brought about the collision, then plaintiff could not recover. This was declaring as a matter of law that Dirkes was responsible for the failure of the engineer to obey the statute. It was therefore properly refused, even if the views expressed in our former opinion were unsound. The eighteenth contained merely an abstract proposition, and it was not error in any event to refuse it. We are of opinion plaintiff's given instruction is not subject to the criticism that it assumes the deceased was exercising ordinary care for his own safety; and if it could be misunderstood, that was prevented by several instructions given for defendant distinctly requiring plaintiff to prove Dirkes was exercising due care for his own safety before a recovery could be had.

We find no reversible error in the rulings of the trial court and are satisfied that with the additional proof now in the record we ought not to again reverse the judgment upon the facts. The judgment is therefore affirmed.

*Affirmed.*